5. United States v. Adam White Good morning, Your Honor. May it please the Court, Tim Zarrillo for Adam White. This is a Portland, Maine drug stop issued by the Maine Drug Enforcement Agency. It was a stop that was purported to be a stop based on a traffic ticket, but the only one who did not know it was about a traffic ticket was my client. The stop was in fact based, it was a drug interdiction stop effectively, and it had been set up in advance that my client, when traveling, would be observed in a traffic infraction. A canine handler would be on the scene and would then sniff search his vehicle. The canine handler was aware that there were to be drugs in the vehicle. Why do we need to get into anything to do with the dogs or the canines or anything? Didn't Judge Hornby find here that there was probable cause to believe there was contraband in the vehicle, and so pursuant to the automobile exception, they had a right to stop them without going through the subterfuge to protect the CI? So if the, as I think I said in my reply brief, I hope, that if this court believes that there's probable cause on that basis based on the recorded phone call, then I would agree that you're right that my issue related to the canine sniff search is probably not relevant. I don't believe there was, as I tried to lay out in my papers, I don't believe there was probable cause for the search, however. How do you get around the lack of probable cause here? You had an informant who looked more than reliable. They had used him many times. They had the recorded phone conversation just before the buy. They had all of the indicia that there was going to be a drug deal. Their client said he'd bring a full, all of that. And, yes, you can argue that for reasons which perhaps escaped me and maybe you, there was an overkill by the government. But it seems to me that all of the elements of probable cause are there. And if they are all there, as Judge Gayada just said, why do we get into any of this? I think you recognize that. So I guess what I want to know is why you don't think there was probable cause. Well, I think that's a, thank you, Judge Stahl. I think those are very good questions. I don't think there's probable cause because nobody knows from the government if there are drugs in the car when they stop the car. We have that from at least two different agents, the agent who is tailing the car and the agent who is in charge. They both acknowledge we don't know if there are drugs in the car. The operational plan that had been in place said that Mr. White was to be resupplied sometime that day, not that he already had the narcotics. And that time he was supposed to then go back to his home in Falmouth, repackage the drugs, supposed to take place between 4 and 6 p.m. that day, and then he was going to go out to make deliveries. So by the time that recorded call is made, with no definitiveness as to when the meet is to take place, et cetera, the agents, I think, correctly said, we don't know if he has drugs in the car at the time that we stop him. And I think that is, I think that's in the record fairly well. Related to reliability of the informant, Your Honor, I have some real concerns with that as well. While he has provided information in the past, he had direct information, as I recall it, in the August and December of 2012 controlled buys. This is February 12, 2013. And his information in this case came from parties unknown, parties that were not vetted by Agent Seth Page. And we frankly don't even know if it is a single party or hearsay built upon hearsay. Yeah, but then you get back to the reported phone call. The reported phone call, the C.I. makes the call, makes the order, and your client says, I'll bring a phone. He shortly gets in the car, which he used in other drug deals, and they stop him. You know, that's pretty good in this area. I understand that's troubling, and as you said before, I do acknowledge that. But on the record, I don't think that, again, the agents don't know because he has to pick up the cocaine, they believe, bring it back to the Falmouth house, package it, and then be able to supply it. They just don't know at the time. And, again, this takes place at around 2.30 p.m. The agent's best information before that was it would be between 4 and 6 p.m. that he would be resupplied. So when he gets that recorded phone call, when he makes that recorded phone call, they truly do not know when he is coming out. As I said in one of my briefs, I think, or I thought it at least, he could just as well be going to Starbucks as he could be going to make a drug deal, and I think that's undisputed on the record. And I think that's the probable cause issue. I'm sorry, Your Honor. Do we have a transcript of the phone call itself in the record? I believe you do, Your Honor. It was part of the suppression hearing. Okay. And unless I'm mistaken, there should be a transcript. So is your argument that the district court then is just clearly wrong in the way he's reading that phone call? He ends his oral decision, as best I can tell, by saying at the end of the phone call, the phone call shows the CI saying to law enforcement, all right, he said that he's all good and that he is rolling. And now the district court read that to say, I take it, I'm now leaving with the drugs, which is not inconsistent with what you say. The testimony does show the agents say they don't know that he has the drugs, but, of course, the test is not certainty. It's probable cause. And so I take the district court to say, here, based on this, there is more than enough evidence to support a perfectly reasonable, prudent belief on the part of law enforcement that at the time they were trailing that car, they believed quite reasonably that drugs were in it because of what transpired in that recorded phone call. So I assume you must be saying that the judge is just clearly wrong in how he reads that call. And if so, how is he clearly wrong? With great respect to Judge Hornby, I do think he's clearly wrong. And, again, it relates back to what the officers themselves are saying. But put to one side what the officers say. What your client says is, I'm, quote, heading in probably pretty soon. What did you want to bring with me? The C.I. says a full. He says, sounds good. And then he says, be definitely bringing that out with me. Isn't it reasonable to think the it, be definitely bringing that out with me, that that was the drug? When he goes out to meet that particular person, Judge Gallardo. I mean, that's the issue from my perspective. In other words, when he goes out to meet that individual customer, for lack of a better term, that he's going to be bringing that out with him. But he doesn't say when. He doesn't say where. He says heading in probably pretty soon. So that's kind of a when. Well, I guess it's a vague when. It's pretty soon. But, again, according to the government's own timetable, he would have been about an hour and a half before they thought that he was being resupplied. So I think it is also reasonable to assume that he was going out to get pickup drugs, if anything. And that's why they don't know if there's anything in the car. And, again, we're looking at the, as I understand it at least, we're looking at the, what did the officers know at the time? The officers did not know there were drugs in the car. Well, but that's always the case with probable cause. You only probably know. You have reason to believe. You don't know. And why would they have gone to this elaborate ruse with all these officers and the dogs if they thought they were going to come up empty-handed? Well, I don't know why they went through the elaborate ruse, other than to say that, in my experience, this is a habit of late with the MDEA related to these ruse traffic stops that sometimes result in drugs and sometimes do not. In this case, they did. Is there anything in the call that identifies a meeting place? Not that I recall, Judge Barron. So is that the basis for your argument? In other words, if he actually was going out to meet the guy to bring him the drugs, you would think the call would end with, and I'll see you at X. Does he know where the ñ I mean, when he leaves the house, what in the call suggests he's going to meet with this person? Does he know where they would meet? Is there any ñ I don't recall a meeting place being set, and it's a very good point because it's, again, more indefiniteness. You know, it's not, hey, I'll meet you in 15 minutes in the main mall parking lot. It is, I'll be coming out pretty soon. And my suspicion is that I think a fair reading of this is that he would have then placed another call and said where and when do you want to meet up. None of that happens here, of course. And so we have this stop where, although I agree that you never know entirely when you stop a car whether there are going to be drugs in it if you're law enforcement, in this case they just didn't know at all. He could have just as easily been on his way to pick up drugs having not picked them up yet. The stop, it's interesting as well, and I know I'm running short on time. You know, the stop, just ñ I know Judge Kayada knows this, but in case Judge Stollen ñ I'm sorry to interrupt. Just one thought. Suppose on your theory that he hasn't set a meeting spot, so there's nothing from this call that on its own suggests he's going to meet the law enforcement agent to actually do the deal. Instead, on your theory, what's much more likely is at the time he leaves he's just heading to his supplier to pick stuff up. Right. Suppose that's all we had and actually the phone call said, I'm now on my way to my supplier to get a boatload of cocaine so I can then sell it. Would that not itself provide probable cause to think that a person engaged in a drug trade like that may well have some cocaine in the car? Well, I don't think there is ñ another great question. I don't think there was any evidence of that, though. The evidence, as I recall it, was that he was completely out of narcotics. That's what I remember the evidence to be. That's why he needed to wait to be resupplied to supply other people. Again, the other hybrid to that answer is I am supposing that a fair reading of the ñ the most nefarious reading of the record is that he might be going out to get resupplied. It's just as likely that he was going to Starbucks or to McDonald's or to wherever. Thank you, Mr. Sobel. Thank you, Your Honor. I'm Margaret McGoy for the United States. I, too, would like to focus on the issue of whether there was probable cause to stop the car for drugs. As the Court is aware, the standard of review is very favorable to affirmance for two reasons. One is that this Court's review is to decide whether any reasonable reading of the record supports the ruling below. And if it does, the ruling will be affirmed. And the second is that the test for probable cause is not any one fact in isolation, but it is the totality of the circumstances viewed through the eyes of trained police officers who are permitted to infer things from facts that may not be apparent to the rest of us. The totality of the circumstances in this case began with police contact with a person who had been proven reliable in other cases. He had bought drugs from the defendant many times, which meant that he was giving information based on personal knowledge. Much of the information or some of the information that he had given had been corroborated. For example, he had described in detail where the defendant lived. The police had corroborated that. He had told the police what kind of car the defendant drove. He had told the police what his method of operation was, that he operated out of a car. In addition, there were two controlled purchases of drugs within six months of this time period. Both of them took place in a remarkably similar pattern. Namely, the informant called the defendant. The defendant agreed to sell him drugs. The informant was wired with recording information. He met the defendant. Immediately after he met the defendant, he produced what was field tested and proved to be cocaine. In those circumstances, I assume that the calls would show that the call identified a meeting spot? In the other? Yeah. But there's nothing in the record that suggests that. Is there anything in this record that shows they had identified a meeting spot? Let me tell you what I can read from that phone call. It is Government's Exhibit 1, Judge Barron. It was admitted in evidence at the suppression hearing. The conversation begins with the defendant saying, I'm heading in pretty soon, what did you want to bring with me? Suggesting to a reasonable police officer that he already had it. And then the second to last line, all right, just let me know if you go to the mall and hit me up. That's the informant. So a reasonable interpretation of that is that there is going to be some further communication to identify the meeting spot. But the clear interpretation of that recorded call is that the informant orders a full, which the officers understand to be an ounce of cocaine, that the defendant says, I'm definitely bringing that with me, and that they agree that they will meet at a later time. But that call cannot be considered in isolation. That call has to be considered in the totality of the circumstances, which include, as I say, detailed information from an individual who is giving information based on his own experience with the defendant that is corroborated both in detail, such as where the defendant lives and the controlled person. But I guess I'm just having trouble seeing how the call suggests that at the time he leaves the house, we have any reason to believe he's heading to the meetup with the purchaser. I think the reasonable interpretation of the record is that they have agreed that they will get in contact later. It says, let me know if you go to the mall or not and hit me. But is there some subsequent communication between the two that suggests right before he's leaving that they then identified the meeting spot? Well, that never occurs because the stop takes place. No, no, I'm just saying, there's this phone call. Yes. Then he leaves the house. Yes. At the time he's leaving the house, this call identifies no meeting spot. Correct. So what makes us think that when he's leaving the house he's heading to a meeting spot? What makes us believe that is that there may be another step in the process, but that he has the drugs with him and that he is agreeing to supply the defendant with an ounce of drugs. So the idea is from the road he's going to get in touch with the guy? Not beyond the realm of possibility at all, Judge Barron. That's why we have cell phones and cars for people to make contact with each other. And, again, the point here is not whether the police were certain to an assurity that the defendant had drugs, but whether there was probable cause to believe that he had drugs. And probable cause is a standard where a person of reasonable prudence would suspect that evidence of a crime or contraband is on the person or in the place to be searched or seized. It does not require certainty. All it requires is probable cause, which, as I understand that term, is 51%. How close to his leaving from his house to where he stopped was it? Was this almost immediate? My understanding from the record, Judge Stahl, is that his house was in Falmouth, and from Falmouth to Portland is, depending on who's driving, 15 or 20 minutes. So it was certainly within the hour that the police encountered him speeding through a school zone. And we can't forget that either, because Judge Hornby said there were two independent bases for the stop in this case. One was the probable cause to suspect he was involved in drugs, which, of course, is the more serious one. But the second was that he was speeding in a school zone. And the police officer, whose testimony Judge Hornby specifically credited, testified he knew that three different ways. So, yes, but that only gets you so far. So are you now arguing inevitable discovery in any event? Because as I understand it, since he was speeding and since she had no license, could the car have left that spot without it being towed in? You're absolutely correct, Judge Stahl. It could not have left it. And you are absolutely correct that the South Portland Police Department has a standard inventory process, and even if none of these events had taken place, the stop would have warranted impounding the car, and the gun, the drugs, and the other paraphernalia would inevitably have been discovered pursuant to that inventory process. On either one of those bases, Judge Hornby made a very reasoned alternative ruling that warrants denying the motion to suppress. If the court has other questions, I'd be happy to answer them, but in the government's view, the standard of review very heavily warrants affirming the refusal to suppress the evidence. Thank you. Thank you, Mr. Floyd.